UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERITAS ADMINISTRATORS, LLC | |
| Plaintiff, | Case No. 1:22-CV-337 |
| v. | |
| JAMES E. NOWAK, | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of a dispute over the ownership of Veritas Administrators, LLC and the alleged misuse of its trade secrets. Plaintiff Veritas has sued Defendant James Nowak for the alleged theft of trade secrets and for breach of the duty of loyalty, [1]. Nowak moves to dismiss or stay based upon an earlier-filed state court case, [9]. For the reasons set forth below, the Court denies Nowak's motion [9].

**I.     Factual Allegations & Procedural History**

In late 2010, James E. Nowak and Michael Bruno, who had an established business relationship, talked about forming a company to handle and adjust insurance claims on behalf of various customers. [9-1] ¶¶ 3–5. In the spring of 2011, they formed Veritas Administrators, LLC for this purpose. *Id.* ¶ 6. Veritas, a Delaware limited liability corporation with its principal place of business in Tinley Park, Illinois, operates as an insurance claims management company, fulfilling a variety of obligations for its clients, ranging from independent claims adjusting to full third-party administration. [1] ¶ 4. The bulk of Veritas' clients are insurance

companies, which supply insurance claims for Veritas to investigate and manage; Veritas handles claims relating to, among other things, commercial trucking, heavy equipment, cargo, towing resolution, property, general liability, and workers' compensation. *Id.* Nowak worked for Veritas from 2011 through October 2020, most recently as Vice-President. [1] ¶ 6. Bruno serves as Veritas' President. [1] at 21.

Nowak claims that he and Bruno agreed that they would each own 50% of Veritas and that Bruno would handle Veritas' formation and finances; yet, despite Nowak's repeated requests, Bruno never finalized the ownership agreement for Veritas to reflect this agreement. [9-1] ¶¶ 9, 14–15, 33. Nowak claims that, in April of 2011, he began his efforts to market and develop Veritas on a full-time basis, quitting the job he held previously. *Id.* ¶ 6. In June of 2011, given Nowak's initial success growing the company, Bruno quit his day job to devote his full-time efforts to Veritas. *Id.* ¶ 11. Nowak did not receive a regular salary for his work; rather, he received "sporadic payments" based upon what Bruno decided (from his handling of the company finances) the company could afford to pay. *Id.* ¶ 12. In January 2012, Bruno told Nowak he could start drawing an annual salary of $19,800 per year. *Id.* ¶ 13. Nowak asked several times to review the company's financial information, but Bruno never provided it. *Id.* ¶¶ 18–19, 21–23.

In April of 2019, Bruno told Nowak that Nowak owned just 15% of the business, [9-1] ¶ 26. Around this same time, according to Bruno and Veritas, Nowak developed a plan to establish a new business to compete with Veritas. [1] ¶¶ 46–48. In July of 2020, Bruno offered to buy Nowak's interest in the company. *Id.* ¶ 36. That same

month, Nowak formed Risant Claims Services LLC and began developing the business, which competes with Veritas in certain areas. *Id.* ¶¶ 56, 58–59. On October 12, 2020, Veritas fired Nowak. *Id.* ¶ 57.

Despite the ownership dispute, Veritas' business thrived. Over time, Veritas developed a client database containing 819 rows of clients with 41 discrete pieces of data for each client, maintained on a confidential basis. [1] ¶¶ 21, 24. Additionally, Veritas developed a unique Towing & Storage Resolution service to audit invoices, identify regulations, and utilize a confidential pricing format to reduce the price of settling claims for clients. *Id.* ¶ 12.

On May 5, 2021, Nowak sued Bruno in state court for breach of contract and fraud based upon Bruno's failure to honor the parties' alleged agreement concerning ownership of Veritas. [9] at 1–2. Thereafter, on January 1, 2022, with the state action pending, Veritas filed suit in this Court, [1], alleging that Nowak violated the Defend Trade Secrets Act (DTSA), the Illinois Trade Secrets Act (ITSA), and his common law duty of loyalty. [1] ¶¶ 1–3. In its federal and state trade secrets claims, Veritas alleges that Nowak downloaded Veritas' confidential client database using his knowledge of the confidential Towing & Storage Resolution service, solicited Veritas employees, misappropriated protected trade secrets, and opened a new business that directly competes with Veritas. [1] ¶¶ 48–49, 60. Michael Bruno signed Veritas' complaint, as President of Veritas. [1] at 21. Nowak now moves to dismiss Veritas' complaint for lack of subject-matter jurisdiction under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). [9].

## II. Legal Standards

Nowak moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. [9] at 2. In ruling upon a 12(b)(1) dismissal, the Court must accept as true all well-pled factual allegations and draw reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999).

Generally speaking, "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court.'" *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817). Under *Colorado River*, "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River*, 424 U.S. at 817–18). The doctrine's "primary purpose" is "to conserve both state and federal judicial resources and prevent inconsistent results." *Id.* But abstention is the exception—meant for extraordinary circumstances—not the rule. *Colorado River*, 424 U.S. at 813. This Court, like all federal courts, has a "virtually unflagging obligation" to assert jurisdiction where authorized. *Id.* at 817; *Mata v. Lynch*, 576 U.S. 143 (2015).

In deciding whether to abstain under *Colorado River*, the Court first determines whether this case and the state court case are "parallel"—that is, whether the cases involve "substantially the same parties" litigating "substantially the same issues in another forum." *Id.* at 1019; *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641,

4

646 (7th Cir. 2011). While the state and federal cases need not be identical to be parallel, there must be a "substantial likelihood" that the state case will dispose of *all* claims presented in the federal case. *Id.* at 1018 (emphasis added). In deciding whether cases are parallel, the Court also asks whether they raise the same legal allegations or arise from the same set of facts. *Freed*, 756 F.3d at 1019. One important factor is "whether both cases would be resolved by examining largely the same evidence." *Huon*, 657 F.3d at 647.

If the state and federal actions are not parallel, *Colorado River* does not apply, and the Court need not abstain. *Id.* at 646. If they are parallel, then the Court must go on to weigh ten non-exclusive factors to decide whether abstention is proper. *Freed*, 756 F.3d at 1018. The ten factors are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Id.* The list of factors constitutes "a heuristic aid" designed to be "helpful" in the balancing process; it is not "a straightjacket," and no single factor will be dispositive or even automatically relevant. *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 647 (7th Cir. 2021); *Huon*, 657 F.3d at 648.

Additionally, "neutral factors weigh in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648.

### III. Discussion

#### A. Parallel Cases

Consistent with the legal standards outlined above, the Court first considers whether this case and Nowak's state court case are parallel. They are not.

First, the cases involve different parties suing on different claims: in the state case, Nowak sued Bruno for breach of contract and fraud, [9-1]; here, Veritas sued Nowak for federal and state trade secret violations and for breach of the duty of loyalty (Bruno is not a party to this case). [1]. As Nowak correctly notes, some unity of interest exists between Bruno and Veritas, given that Bruno owns 100% of the company and serves as its President. *See* [9] at 3–4. But they are not the same legally, and treating Bruno and Veritas as such ignores one of the fundamental reasons for forming an LLC—to separate the owners from the business organization.

Perhaps more significantly, resolution of the state case will not resolve the claims raised here; nor will the cases turn on the same evidence. Nowak's state court breach of contract claim alleges that he and Bruno agreed to form Veritas as equal owners, and that Bruno breached that agreement by failing to acknowledge Nowak's ownership interest in the company. [9-1] ¶¶ 37–43. Nowak's fraud claim alleges that Bruno represented that he and Nowak had a 50/50 ownership interest in the company when they did not, and that Bruno knew this was false when he told Nowak otherwise, intending Nowak to rely upon the false representation and exploiting

6

Nowak's labor and skills. *Id.* ¶¶ 44–49. Resolving these claims will not resolve Veritas' trade secret claims, which appear to stem from conduct by Nowak after he learned he did not own Veritas; and, indeed, as Veritas correctly points out, having a partial interest in a company does not entitle an owner to misappropriate the company's trade secrets. [12] at 5–6. *See, e.g., Westrock Co. & Victory Packaging, LP v. Dillon,* No. 21-CV-05388, 2021 WL 6064038, at *6 (N.D. Ill. Dec. 22, 2021) (To establish violation of the ITSA or DTSA, the plaintiff must prove that "(1) a trade secret existed; (2) it was misappropriated through improper acquisition, disclosure, or use, and (3) the misappropriation damaged the trade secret's owner."). Thus, the resolution of the breach of contract and fraud claims is not dispositive of the DTSA and ITSA claims raised here.

Additionally, evidence in the state court case will revolve around verbal statements during the 2010 and 2011 timeframe concerning the nature and scope of any agreement between Nowak and Bruno and statements made by Bruno in and around that time. [12] at 4–5. In contrast, the DTSA and ITSA claims will turn on evidence relating to the existence of trade secrets, Veritas' protection of those secrets, and Nowak's actions in and around 2020.

For these reasons, the Court finds that Nowak's state court action and this action are not parallel.

7

### B. Factor Analysis

Although the Court's finding that the state court and federal cases are not parallel disposes of the present motion, consideration of the above ten factors further bolsters the conclusion that abstention remains improper.

First, the Court considers whether the state has assumed jurisdiction over property. It has not, and this factor thus weighs against abstention.

Second, the Court considers the inconvenience of the federal forum. Plaintiff sued in the 12th Judicial Circuit Court, in Will County, which sits within the Northern District of Illinois. The main courthouse is in Joliet, roughly forty-five miles from the Dirksen United States Courthouse. Nowak lives in Mokena, which is about thirty-five miles from the federal courthouse and about 11 miles from the Joliet courthouse. To the extent any evidence lies within Veritas, the company is located in Tinley Park, which is roughly twenty-eight miles from the federal courthouse and roughly twenty-one miles from the Will County Courthouse. This factor weighs slightly in favor of abstention, if at all.

Third, the Court considers the desirability of avoiding piecemeal litigation. This factor concerns the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority. *Freed*, 756 F.3d at 1022. As a practical matter, the goal remains to avoid duplicating judicial resources to oversee similar proceedings such as "pre-trial motions, discovery matters, and the consideration of similar issues, evidence, and witnesses." *Id.* Given the differences in the parties and the claims,

such duplication should be minimal, and the risk of inconsistent rulings remains low. As a result, the third factor weighs against abstention.

Fourth, the Court considers the order in which jurisdiction was obtained by the concurrent forums. Here, Nowak filed the state case on May 5, 2021, more than eight months before Veritas filed this case on January 20, 2022. [9] at 1–2. This factor thus weighs in favor of abstention.

Fifth, the Court considers the source of the governing law. With regard to the state law claims, this factor is a wash, as Illinois law governs the state claims asserted in both the state court action and the federal action. Federal law, however, governs Veritas' DTSA claim. Nowak contends that the application of federal law remains immaterial, as the DTSA and the ITSA have the same rule of decision and remedies. [9] at 6. But, as Veritas correctly points out, Congress passed the DTSA to offer protection for trade secrets under federal law knowing that state laws like the ITSA already existed. [12] at 8. This factor weighs against abstention.

Sixth, the Court considers the adequacy of the state court action to protect the federal plaintiff's rights. Again, since the state action does not involve trade secret issues, it will not protect Veritas' rights in this regard, which weighs against abstention.

Seventh, the Court considers the relative progress of the state and federal claims. Although Nowak filed the state case months before Veritas filed this case, neither case has progressed much beyond the initial pleadings stage. In the state case, the court denied Bruno's motion to dismiss, [9] at 5, and the parties have

9

conducted some discovery. [12] at 9. This factor thus weighs slightly in favor of abstention.

The eighth factor considers the presence or absence of concurrent jurisdiction. In *Freed*, this factor favored abstention because the state court proceedings were necessary to resolve key facts before the federal claim could be resolved. *Freed*, 756 F.3d at 1023. That is not true here, and this factor weighs against abstention.

The ninth factor considers the availability of removal. The parties in the state court case are not diverse and Nowak asserts only state law claims there; the case thus is not subject to removal. But this factor "intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. As explained above, although the two cases may overlap slightly, they are not "closely related." Thus, to the extent this factor weighs in favor of abstention, it does so minimally.

Finally, the Court considers the vexatious or contrived nature of the federal claim. Nowak contends that Veritas sued in federal court under the DTSA instead of the state ITSA to multiply the proceedings and increase Nowak's expense. [13] at 5. And the timing of the suit supports this contention. But Veritas contends that it sued under the DTSA because of the additional protections offered by the federal statute. [9] at 9. To be sure, the DTSA has extraterritorial reach, but the ITSA does not. *See Motorola Sols., Inc. v. Hytera Commun. Corp. Ltd.*, 436 F. Supp. 3d 1150, 1168 (N.D. Ill. 2020), which may be important if the trade secrets at issue relate to products or services in interstate commerce. And the DTSA allows a plaintiff to recover avoided

10

cost damages, though it is not clear at this stage whether this distinction will be important. This factor weighs both ways and is thus neutral, which weighs against abstention. *Huon*, 657 F.3d at 648.

On balance, five of the factors weigh against abstention, one is neutral (which weighs against abstention), and the factors that weigh in favor of abstention do so only slightly. As a result, even if this Court were to find that the state and federal cases were parallel (they are not) abstention still would be improper. In short, this case does not present the exceptional circumstances necessary to trigger abstention.

## IV. Conclusion

For the reasons explained above, the Court finds that abstention under *Colorado River* remains improper and thus denies Nowak's motion to dismiss [9]. Defendant shall respond to the complaint by January 23, 2023, and the parties shall file an updated status report by February 3, 2023, proposing reasonable case management dates.

Dated: December 29, 2022

ENTERED:

John Robert Blakey
United States District Judge